**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br>GINGER SIRIKANJANACHAI,<br>                    Debtor<br>―――――――――――――――<br>TOWN OF HINGHAM,<br>                    Plaintiff<br>v.<br>GINGER SIRIKANJANACHAI,<br>                    Defendant | Chapter 7<br>Case No. 17-12526-FJB<br><br><br><br>Adversary Proceeding<br>No. 17-1128 |

**MEMORANDUM OF DECISION**

**INTRODUCTION AND PROCEDURAL HISTORY**

By its complaint in this adversary proceeding, the Town of Hingham, Massachusetts (the "Town") seeks relief against debtor Ginger Sirikanjanachai (the "Debtor") in two Counts. By Count I the Town seeks a declaration that its judgment for specific performance against the Debtor is not a "claim" as that term is defined in the Bankruptcy Code and therefore not subject to the discharge she has received in her chapter 7 case. By Count II, the Town seeks a determination under 11 U.S.C. § 523(a)(2)(A) or (B) that its right under the same judgment to recover attorney's fees from the Debtor is excepted from discharge as one arising from alleged misrepresentation.

The complaint states with particularity all but two of the misrepresentations on the basis of which it now seeks a determination of nondischargeability. The two exceptions concern

misrepresentations of the amount of the debtor's income.[1] Although the complaint alleges generally that the Debtor made misrepresentations of her income, it does not specify the representations in question, how and where the Debtor made them, and how each was false. And this shortcoming of the complaint was not rectified any time prior to or at the trial.

After a trial, I hereby enter my finding of fact and conclusions of law.

**FINDINGS OF FACT**

The Debtor, whose name at present is or appears to be Ginger Sirikanjanachai, has also been known by the names Wanpen Sirikanjanachai (which she says was her birth name), Wanpen Florentine (which she says she took upon her marriage in 1974 to a George Florentine), Wanpen Collins (which she says she took upon her remarriage in 1987 to Joseph Collins), Penny Collins, Penny Siridee, Penny Collins Siridee, and Laciga Rachaisri. The name Laciga Rachaisri, she states, is one she was given for good luck by a Buddhist monk in Thailand in 1986, when she had returned to Thailand for two years and was seriously ill. She states that she obtained this name change from Thai authorities "and converted from Wanpen Sirikanjanachai to Laciga Rachaisri." It appears that in succeeding years, she used the name Laciga Rachaisri alongside the other names she used in that period. The Debtor contends that she also created and did business through a corporation known as Laciga Rachaisri, Inc.

The Town participated in a residential real estate development under MASS. GEN. LAWS ch. 40B, §§ 20-23 and C.M.R. Chapter 760, § 56.00 et seq., which provides for the creation of affordable housing. Units in the development known as 23 Ridgeway Crossing (the "Development") were offered to people that met certain restrictions. Persons who qualified participated in a lottery for the available units. In order to qualify, an applicant had to (a) have low to moderate income, (b) be over age 55, (c) intend to

---

[1] Specifically, the Town seeks findings that the Debtor made two misrepresentations in the application process about the extent of her income: first that she omitted some $2,000 per month that she was then receiving as payments over time from an earlier sale of a restaurant she had owned and operated, and second that she failed to report as income in 2005 the $170,000 that constituted the price at which, in 2005, she had sold her interest in the real property at 64 Queensbury Street in Boston.

2

occupy the unit with at least one other resident, and (d) be a first-time home owner with limited assets. The Town also gave preference to current Hingham residents who were members of a minority group. The Hingham Housing Authority (HHA) acted as the Town's agent in selecting purchasers eligible to participate in the lottery and purchase a unit through the Town's affordable housing program.

On or about March 11, 2006, the Debtor, under the name Wanpen Florentine, filed a written application with the HHA to purchase a unit at the Development. She supplemented the written application with oral answers to questions put to her by employees of the HHA about her written application.

Based on the testimony and documents in evidence, I find that the application that the Debtor completed and submitted to the HHA, as supplemented by her oral answers to questions, contained the following four misrepresentations.

**a. That Laciga Rachaisri Would Be a Separate Member of Her Household**

First, the application was in the names of both Wanpen Florentine and Laciga Rachaisri as two different members of the household, when in fact these were two names for the same person, the Debtor. The application thus falsely represented that the Debtor's intent was to occupy the unit with another individual named Laciga Rachaisri.

The Debtor initially indicated in the application that the household would also include a third person, her then 16-year-old daughter, but the Debtor later informed the Town that her daughter no longer planned to live with her. Accordingly, when the Town determined the Debtor's eligibility, the Debtor's representation that Laciga Rachaisri would be an occupant was necessary for the Debtor to satisfy the requirement that her unit have more than one occupant; and the Town relied on this representation—and was aware of no reason not to rely on it—in determining that she was eligible.

The Debtor contends that she did not write on the name line "Laciga Rachaisri" but "Laciga Rachaisri Inc."—in essence, an indication that one of the occupants would be her corporation. I find this

3

testimony not credible for several reasons. First, the form as completed does not include the extension "Inc." and shows no evidence of having been so altered. Second, it is implausible that the Debtor believed that a corporation or other business entity could qualify as or be a member of the household. Third, later in the application form, where it instructs the applicant to "list all those who will occupy this unit including yourself," she indicated three occupants: herself, her daughter, and "Laciga Rachaisri," again without the extension "Inc." Fourth, the Debtor signed the application with two separate signatures, one for each of Wanpen Florentine and Laciga Rachaisri, as if these were signatures of two individuals. The signature of Laciga Rachaisri did not indicate or purport to be the signature of an individual signing on behalf of a corporation. Fifth, from a notation made by an official of the HHA on the basis of oral representations made to her by the Debtor, it appears, and I find, that the Debtor represented to this official that Laciga Rachaisri was a sister of the Debtor. Sixth, she has adduced no evidence that she ever explained to the HHA what Laciga Rahaisri, Inc. was or what her relationship to it was. And seventh, in support of the application, the Debtor gave the Town federal tax returns—both were Form 1040-EZ—for each of Wanpen Florentine and Laciga Rachaisri, creating the impression, the false pretense, that these were two distinct individuals. The Debtor concedes that, though she has or had a social security number (SSN) in the name of Wanpen Florentine, she has had no SSN in the name of Laciga Rachaisri. Yet the tax return she submitted in the name of Laciga Rachaisri included an SSN that was different from that of Wanpen Florentine. The Debtor contends that the SSN on the return of Laciga Rachaisri was in fact the taxpayer identification number (TIN) of Laciga Rachaisri, Inc., and that she believed it was appropriate to enter the TIN for this corporation in the space for the SSN on form 1040-EZ because that particular return was a return for the income that she had earned through the corporation, and a professional tax return preparer had done the same for her in the past. This is all too far-fetched to credit. She submitted no evidence to support her contention that a professional tax return preparer had done the same for her in the past or had led her to believe that she could enter a

4

TIN in the space on Form 1040-EZ for a SSN, much less that (i) she could report corporate income (even of the pass-through variety) through a Form 1040-EZ or (ii) that she could report income she received under two different names on two different returns. I do not believe that the Debtor believed she was free to do any of these things.  I find that she understood that the Town would be misled by her submission to them of a Form 1040-EZ in the name of Laciga Rachaisri.

In addition, the Debtor testified at trial that she had never held Laciga Rachaisri out as a separate person from herself, but the evidence indicates otherwise.  In her 2003 Declaration of Trust Establishing the Six Crow Point Realty Trust, which declaration she recorded in the Plymouth County Registry of Deeds, she named herself (under the name Penny Collins Siridee) as the initial trustee and specified that Laciga Rachaisri "shall serve as Successor Trustee hereunder upon the death or disability of the initial Trustee."  I conclude that the Debtor's testimony may not be trusted and that she has in the past held Laciga Rachaisri out as a separate individual from herself.

For these reasons, I conclude that the Debtor, through oral and written statements to the Town in conjunction with the application, misrepresented and created a false pretense that Laciga Rachaisri was a separate person from the Debtor who would occupy the Debtor's unit with her.  And I further find that the Debtor made this false representation and created this false pretense with knowledge of its falsity and with intent to deceive and induce reliance on it.

    b.   **That She Had Not in the Past Owned a Home**

On its first page, the application asked, "Have you owned a home at any time in the past?"  The Debtor answered in writing, "NONE."  This answer was false.  The Debtor had, in her own name, owned at least two homes in the past.

First, on April 9, 2001, the Debtor purchased—in her own name, not as trustee of a trust—real property, a condominium unit, at 64 Queensbury Street, Unit 110, Boston, Massachusetts, for $54,000.

After holding the property for over four years, she sold the property in August 2005 for $170,000. This unit was a home, and she had owned it in her own name for some 52 months.

Second, in July 1999 and for stated consideration of $100, the Debtor acquired in her sole name (as Penny Collins-Siridee), and not as trustee of a trust, the real property at 11 Crooked Meadow Lane, Hingham, Massachusetts. She held this property in her own name until, on December 2, 2003, she conveyed it for stated consideration of $1.00 to herself, Penny Collins-Siridee, as Trustee of the Eleven Crooked Meadow Realty Trust under declaration of trust dated December 2, 2003. The real property at 11 Crooked Meadow Lane served as the Debtor's home from when she acquired this property in her own name in 1999 at least until she conveyed it to herself as trustee in 2003. The record thus establishes that, when the Debtor completed her application in March 2006, she had owned, in the past, at least two homes in her own name.

The Debtor nonetheless denies that she knew her answer (that she had not owned a home in the past) to be false when she made it. She testified that, when she answered as she did, she mistakenly thought the question at issue was asking whether she owned a home *at that time*; in essence, she contends, she confused this question with a later question in the application: "Do you presently own a home?" I find this explanation not credible. She had taken the form home to complete, and, in completing it at home as she did—albeit not entirely—had reviewed it and familiarized herself with the three questions it asked about her past and present ownership of homes in particular and real estate in general. Therefore, even if she wrote this particular answer in the HHA office, after returning with the form, she knew and understood what it asked. She also concedes that she wrote the answer herself; it follows that, even if she wrote "none" in response to an oral question from an HHA official, she had the application form in front of her at the time and could have read the short, clear question she was answering. By a preponderance of the evidence, I conclude that she made the answer with knowledge of its falsity and intent to deceive.

6

### c. That 6 Crow Point Lane was Owned by Crooked Meadow Realty

The application required the Debtor to indicate where she lived and the name of her current landlord. She indicated—orally to the director of the HHA, not in writing; it is the director who wrote the answer on the application form—that she resided at 6 Crow Point Lane in Hingham and that her landlord was "Crooked Meadow Realty." Her identification of Crooked Meadow Realty as her landlord was false.[2] At the time, 6 Crow Point Lane was owned by the Debtor, under the name Penny Collins Siridee, as trustee of the Six Crow Point Realty Trust under declaration of trust dated May 27, 2003. In fact, Penny Collins Siridee, as the sole trustee of the Six Crow Point Realty Trust, had acquired the property by deed from Laciga Rachaisri (herself by another name) on May 27, 2003, and continued to own 6 Crow Point Lane until she sold it to a third party in January 2013.

The Debtor knew that her answer as to the identity of her landlord was false. I find that she made this false representation with intent to deceive, to conceal the fact that she, as trustee of Six Crow Point Realty Trust, was her own landlord. This, she knew, might have raised questions about the extent of her current and former real estate holdings, questions she preferred not to have to answer.

### d. That She Did Not Then Own a Home

On its third page, the application also asked, "Do you presently own a home?" The Debtor answered in writing, "NO." This answer was false. In March of 2006, when she gave this answer, the Debtor resided at 6 Crow Point Lane in Hingham, Massachusetts. She herself represented to the Town that this property was where she resided, her home. Accordingly, it was a home. Also in March 2006, the Debtor, under the name Penny Collins Siridee and as the sole trustee of the Six Crow Point Realty

---

[2] The Town also seeks a finding that her representation that she resided at 6 Crow Point Lane was false. The Town has not carried its burden on this issue. The evidence indicates that 6 Crow Point Lane is the address at which, over many years, the Debtor operated a restaurant. She maintains that, during certain periods, including 2006, she also resided at this address. Although I have no confidence in the Debtor's testimony, I also have no evidence that she did not reside at 6 Crow Point Land at the time.

7

Trust, owned 6 Crown Point Lane.  The Debtor, under the name Penny Collins Siridee thus had at least legal title to the home at 6 Crow Point Lane when she filed her application.

The Six Crow Point Realty Trust, which the Debtor herself declared and thus created, is a Massachusetts nominee trust; except in certain limited respects, the Trust specified, the "Trustee shall have no power to deal in or with the Trust Estate except as directed by the beneficiaries." The beneficiaries are not identified in the declaration of trust but in a separate schedule of beneficiaries. The Debtor represented that she had only the interest of a trustee, not a beneficial interest in the Trust, but her testimony is not credible or reliable; and neither she nor the Town has placed the schedule of beneficiaries in evidence.  Still, though I have no confidence that the Debtor did not own some or most of the beneficial interest in this trust, I have no other evidence on the issue.  As the burden is on the Town to prove falsity, I find only that the answer was false in that it withheld the Debtor's legal title to the property.

When she completed the application, the Debtor also owned a second home.  Specifically, under the name Penny Collins Siridee and in her capacity as trustee of the Eleven Crooked Meadow Realty Trust, she owned the real property at 11 Crooked Meadow Lane in Hingham.  This property, too, was a home.  The Debtor testified that she occupied it as her home from 1999 to 2003.  She contends that she was given this property in a divorce settlement with her husband in 1999, under which the children became beneficiaries of the trust but she was allowed to keep the property, remain in possession of it, until the children were emancipated.  She has submitted no evidence to corroborate this.  Still she concedes that she had title as a trustee and, in addition to such title, a right to occupy the property until her children were emancipated.  On the application she submitted with the HHA in March 2006, she indicated that she had a daughter born in 1990; this daughter would not have been emancipated as of the submission of the application.

8

The Debtor understood that, by virtue of these titles she held as trustee, she was an owner of the homes at 6 Crow Point Lane and 11 Crooked Meadow Lane.  Her failure to disclose the title she held as trustee was a misrepresentation, a concealment of interests she held.  She knew her answer to be false when she made it, and she made it with intent to deceive.

The Town seeks a finding that the Debtor made a further misrepresentation in the application, that she did not have other real estate holdings.  I cannot so find.  On its third page, after inquiring as to whether the applicant presently owns a home, the application further asked, "Do you have other Real Estate Holdings?"  "Other" here referred to holdings other than any presently-owned home the applicant disclosed.  Though she had listed no homes in response to the previous question, the Debtor supplied no answer to this question.  When she returned with the form to the HHA office, the line following this question was simply left blank.  The Town would have me find that this was effectively and implicitly an answer of "no," a representation that she did not have other real estate holdings.  In these circumstances, I do not so find.  The application form did not instruct "list all other real estate holdings," in which event a failure to list any would have been an implicit "none."  Rather, it asked *whether* she had any other real estate holdings and required a yes or no answer.  In addition, when the Debtor returned the application to the Town, a number of required items were incomplete or unanswered.  Town officials reviewed it with the Debtor and obtained answers to most items that were not answered, but not this one.  For these reasons, I find that the lack of an answer was just a lack of an answer, no representation at all.

As I have found above, at the time, the Debtor had interests as a trustee in the real property at 6 Crow Point Lane and 11 Crooked Meadow Lane.  I further find that the Debtor knew of these interests and left this item blank with intent to conceal her holdings and deceive. Nonetheless, the Town has not established that it understood and relied on this non-answer as a representation that the Debtor had no other real estate holdings.  The one representative of the Town who did testify said that she simply had

9

not noticed that this item was incomplete.  Nor has the Town established that any such reliance it may have placed on this non-response was reasonable or even justifiable.  The "answer"—insofar as the Town may have construed the non-answer as a negative answer—was at best ambiguous and would have required clarification.  The Town simply neglected to get the clarification.

With the exception of this last item, the Debtor knew each of the above representations to be false when she made it, and she made each with intent to deceive.  The Town was unaware of cause not to believe the representations and relied on them to its detriment by treating the Debtor as eligible to participate in its affordable housing program and specifically in the lottery for available units at the Development, when in fact she was not eligible.  This resulted in the Debtor's acquiring a condominium unit in the Development, Unit 24 ("Unit 24" or "the Unit"), through the program for less than fair market value.  Had the Town known the truth about any one of these representations, it would have treated the Debtor as ineligible.

On the basis of her written application and supplemental oral answers, the Town determined that the Debtor was eligible to participate in the lottery for the then-available units in the Development. She did participate in the lottery, won the opportunity to purchase a unit, and, on August 13, 2008, purchased Unit 24. The deed conveying the Unit to the Debtor included a "Local Initiative Program Deed Rider" (the "Deed Rider"), which, on August 13, 2008, the Debtor signed.

The Deed Rider obligated the Debtor to give the Town notice in writing when she intended to sell the Unit and, among other things, gave the Town a right of first refusal to purchase the Unit for a specified maximum resale price.  The Deed Rider also prohibited the Debtor from leasing, refinancing, mortgaging (except in conjunction with the conveyance by which she acquired the Unit), or otherwise encumbering the Unit without the prior written consent of the Town.

From 2009 through 2012, the Debtor violated these provisions of the Deed Rider four times.  First, on April 10, 2009, she purported to transfer the Unit to Wampen Florentine as Trustee of the

Twenty Three Ridgewood Realty Trust under declaration of trust dated April 9, 2009. This conveyance was made without prior notice to or consent by the Town. Second, on May 3, 2010, Wampen Florentine as Trustee of the Twenty Three Ridgewood Realty Trust granted a mortgage on the Unit to Penny Collins Siridee (that is, herself), as Trustee of Twenty Three Ridgewood Crossing Lending Trust under declaration of trust dated May 3, 2010, in the amount of $300,000. Third, on February 8, 2012, Wampen Florentine as Trustee of the Twenty Three Ridgewood Realty Trust granted a mortgage to Laciga Rachaisri [the Debtor herself] in the amount of $89,000. And fourth, on April 6, 2012, Wampen Florentine as Trustee of the Twenty Three Ridgewood Realty Trust granted a mortgage to the Seally Investment Trust under declaration of trust dated April 4, 2012 in the amount of $200,000. According to a recorded Notice of Memorandum of Trust, Joseph Collins, the Debtor's second husband, is the sole trustee of the Seally Investment Trust. The Debtor granted these three mortgages on the Unit without prior notice to or consent by the Town.

On February 6, 2013, the Debtor notified the Town of her intent to sell the Unit. The Town then notified the Debtor of its intent to exercise its right to acquire the Unit through exercise of the right of first refusal given it in the Deed Rider. A closing for purposes of the Debtor's conveying title to the Town was scheduled for June 18, 2013. On that date, the Debtor appeared at the closing but was unable perform for three reasons: (i) the mortgage discharge from Seally Investment Trust was not accompanied by a trustee certificate or other evidence of the authority of the signatory to sign the discharge on behalf of the mortgagee; (ii) the Debtor was unable to deliver a recordable discharge for the mortgage granted to Laciga Rachaisri; and (iii) the Unit was not in the condition required by the Deed Rider.

When the Debtor did not correct these impediments to closing, the Town, on August 30, 2013, initiated an action in Massachusetts Superior Court for (i) avoidance of the unauthorized conveyances and junior encumbrances on the Unit, (ii) specific performance of the Debtor's obligation to convey the

11

Property to the Town, and (iii) damages for breach of contract and for intentional and negligent misrepresentation.  The parties filed cross motions for summary judgment in the state court action.  The state court allowed the Town's motion and denied the Debtor's cross-motion.  On June 26, 2017, a judgment entered in favor of the Town that, among other things, (i) declared void and of no effect the Debtor's conveyance of the Unit to herself as Trustee of the Twenty Three Ridgewood Realty Trust and each of the three mortgages that she, as Trustee of the Twenty Three Ridgewood Realty Trust, had granted on the Unit; (ii) required the Debtor to convey fee title to the Unit to the Town for the amount of $181,750 on the sixtieth day after entry of the judgment, (iii) authorized the Town to payoff from the proceeds a mortgage on the Property, (iv) ordered the Debtor to pay the Town $70,155 as reasonable attorney's fees and $478 in costs, a total of $70,633, and (v) authorized the Town to recover the attorney's fees and costs by offset against the purchase price.  The Debtor appealed from the judgment.

On July 3, 2017, the Debtor also filed a petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the bankruptcy case in which this adversary proceeding arises.  On January 17, 2018, she received a discharge in this case.  On September 6, 2017, the Town moved in the case for an order declaring that its judgment against the Debtor was not subject to the automatic stay or, in the alternative, an order granting the Town relief from the automatic stay to enforce its judgment.  After a hearing and over the Debtor's objection, the Court, by order dated October 31, 2017, denied the portion of the motion that sought a determination that the automatic stay did not apply to the state court judgment but also granted the Town relief from the stay to proceed with the appeal of the state court judgment and, if successful on the appeal, to complete the specific performance aspects of its judgment, but not to apply sales proceeds in satisfaction of the damages portion of the judgment without further order of the court.  The order required that if the Town purchased the Unit, the Town was to hold the sales proceeds in escrow pending further order of the court. The parties have not indicated whether the appeal has been completed and the sale has occurred.

**JURISDICTION**

The matter before the court is a proceeding under 11 U.S.C. §§ 523(a) and 727(b) to determine the dischargeability of certain judgment obligations. It arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)(I) (core proceedings include determinations of the dischargeability of particular debts). The bankruptcy court accordingly has authority to enter final judgment on the complaint.

**DISCUSSION**

    **Count I**

The issue presented by Count I of the complaint is whether the Debtor's obligation under the Deed Rider, and now under the equitable order of specific performance in the Town's state court judgment against the Debtor, to sell the Unit to the Town, where the Town has exercised its right of first refusal, is subject to the discharge the Debtor has received in this case.[3] The Town's position is that, per 11 U.S.C. § 727(b), a chapter 7 discharge applies only to "debts" existing on the date of the bankruptcy filing, but the obligation of specific performance is not a debt within the meaning of 11 U.S.C. § 101(12) and therefore is not subject to discharge. The Debtor has offered no argument on this issue.

The relevant statutes are as follows.  In cases under chapter 7, and subject to exceptions not applicable here, "[t]he court shall grant the debtor a discharge."  11 U.S.C. § 727(a).  The scope of the discharge so granted is defined by § 727(b).  In relevant part, it states that "[e]xcept as provnded in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all

---

[3] Though the Town was on October 31, 2017 granted relief from the automatic stay to enforce its right of specific performance to complete its acquisition of the Unit, I have not been informed that, to date, the property has in fact been conveyed to the Town.  Therefore I am proceeding on the assumption that specific performance has not yet occurred and that Count I is not moot.

13

debts that arose before the date of the order for relief under this chapter[.]"  In a voluntary case under a chapter of the Bankruptcy Code—this is a voluntary case under chapter 7—the commencement of the voluntary case constitutes an order for relief under such chapter. 11 U.S.C. § 301(b).  The date of the order for relief is accordingly the date of filing of the petition for bankruptcy relief.  It is undisputed that the Town's right to have the property transferred to it under the Deed Rider, and the Town's judgment enforcing that right, arose before the Debtor's filing of her bankruptcy petition.  The issue then becomes whether the Town's right to have the Unit transferred to the Town, whether under the Deed Rider or under the judgment, is a "debt" within the meaning of § 727(b). In § 727(b) and throughout the Bankruptcy Code, "debt" is a defined term that means "liability on a claim." 11 U.S.C. § 101(12).  And "claim" too is a defined term that means

> **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).  The Town's right to compel the Debtor to follow through on her obligation to sell the Unit back to the Town is not a right to payment.  The Debtor's obligation is not to pay the Town but to transfer the Unit to the Town for a specified sale price; it is a right to performance of an obligation to transfer real property.  Therefore, the Debtor's obligation is not a claim under part (A) of this definition.

Is it a claim under part (B)?  The Town undoubtedly has a right to an equitable remedy for breach of performance:  the Debtor breached her obligation to perform, to sell the Unit back to the Town, and the state court gave her, in satisfaction of that right, not money damages but an equitable remedy, an order of specific performance.  I find and conclude that this right to an equitable remedy does not give rise to a right to payment.  The Town's right will not be satisfied unless the Unit is conveyed to the Town.  The return of the Unit itself, as one of a limited number of units in the Town's

14

affordable housing program, is important; unless the Debtor's obligation to sell the Unit back to the Town is enforced, the Town's program will be diminished and the Town will be unable to offer the same unit to another participant. Damages in lieu of specific performance would not suffice. Accordingly, I hold that the Town's right to the remedy of specific performance in its judgment against the Debtor is, though a right to an equitable remedy for breach of performance, not one for a breach that gives rise to a right to payment. Accordingly, this right is not a claim under part (B) of the definition in § 101(5). It is not a claim at all and not subject to the discharge the Debtor has received. The Town is free to enforce the judgment for specific performance.

**Count II**

In Count II the Town seeks a determination that its rights under the state court judgment are excepted from discharge by 11 U.S.C. § 523(a)(2)(A) or (B), parts (A) and (B) being distinct bases for determination of nondischargeability. The Town's rights under the judgment are two: the right of specific performance that was the subject of Count I (as to which I understand that Count II is pled as an alternate basis for determination of nondischargeability); and the right to recover attorney's fees of $70,000. The Town contends that these judgment rights are excepted from discharge on the basis of seven distinct false representations or false pretenses, each one of which, the Town maintains, would suffice to except the entire judgment from discharge.

**(a) Failure to Plead with Particularity**

The complaint states with particularity all but two of the misrepresentations on the basis of which it now seeks a determination of nondischargeability. The two exceptions concern misrepresentations of the amount of the debtor's income.[4] Although the complaint alleges generally

---

[4] Specifically, the Town seeks findings that the Debtor made two misrepresentations in the application process about the extent of her income: first that she omitted some $2,000 per month that she was then receiving as payments over time from an earlier sale of a restaurant she had owned and operated, and second that she failed to report as income in 2005 the $170,000 that constituted the price at which, in 2005, she had sold her interest in the real property at 64 Queensbury Street in Boston.

15

that the Debtor made misrepresentations of her income, it does not specify the representations in question, how and where the Debtor made them, and how each was false. Counts for nondischargeability under § 523(a)(2) sound in fraud, and the fraud on which each count is predicated must be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."), made applicable by Fed. R. Bankr. P. 7009. In view of this deficiency in the Town's pleading, the Debtor was not afforded a fair opportunity to defend as to these instances of alleged fraud at trial. Accordingly, they are deemed effectively waived as grounds for a determination of nondischargeability. The Court will limit its findings to the remaining allegations of misrepresentation.

**(b) False Statements in Writing Regarding the Debtor's Financial Condition, § 523(a)(2)(B)**

The Town contends the three of the alleged seven false statements were statements in writing regarding the Debtor's financial condition within the meaning of § 523(a)(2)(B) and are excepted from discharge thereunder. Two of these three are the alleged false statements regarding her income that, for failure to plead with particularity, I have determined the Town may not now advance as a basis for nondischargeability. I therefore confine my analysis to the third, which is the Debtor's alleged representation in the application that she did not have other real estate holdings.

Section 523(a)(2)(B) states:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (B) use of a statement in writing--
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

16

11 U.S.C. § 523(a)(2)(B). A simple parsing of the statute shows that in order for a debt to be excepted from discharge under this part (B), the plaintiff creditor must establish, among other things, that the debtor made a statement in writing, that the creditor relied on the statement, and that the creditor's reliance was reasonable. For exceptions from discharge under part (B) as under part (A), the burden is on the plaintiff, and the standard is a preponderance of the evidence. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (the claimant bears the burden of proving that its claim falls within an enumerated exception from discharge); *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991) (the standard of proof for discharge exceptions is a preponderance of the evidence).

I have found that the Town has failed to prove by a preponderance each of the three specified requirements. First, the alleged statement was no statement at all. While an omission may sometimes amount to a statement, this non-answer was just a non-answer, not a negative answer. Second, the Town has not proven by a preponderance that it relied on the non-answer as a negative answer. Third, the Town has not proven by a preponderance that any reliance it may have placed on the non-answer was reasonable. In view of the lack of an answer, the response was at best ambiguous and called out for investigation and clarification. The one representative of the Town who testified at trial said that she had apparently failed to notice that this item was not answered. This representative was not a decision maker as to the application, but her testimony indicated that she recognized the blank line to be a lack of an answer. As these three requirements of part (B) are not satisfied as to this alleged representation, I conclude that Debtor's non-response to this question on the application is not a basis for excepting the judgment debt from discharge.

**(c) False Pretenses, a False Representation, or Actual Fraud, § 523(a)(2)(A)**

The Town contends that the remaining four representations are cause to except its judgment rights from discharge under § 523(a)(2)(A). Section 523(a)(2)(A) states:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of
> this title does not discharge an individual debtor from any debt--

17

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).  The Court of Appeals has articulated the standard for the establishment of a false representation under this subsection:

> in order to establish that a debt is nondischargeable because obtained by "false pretenses, a false representation, or actual fraud," we have held that a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

*McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001), citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).  In addition to these oft-recited requirements, there are two others whose satisfaction is not generally in issue.  First, as the statutory language makes clear, the debt in question must be one "for money, property, services, or an extension, renewal, or refinancing of credit . . . obtained by" the false representation.  11 U.S.C. § 523(a)(2).  And second, the false representation must be "other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).  A statement respecting the debtor's or an insider's financial condition would instead be governed by § 523(a)(2)(B).

The Town maintains that its judgment debt arises from four statements that satisfy these requirements.  The four statements are the Debtor's representations (i) that Laciga Rachaisri would be a separate member of her household from the Debtor herself, (ii) that she had not in the past owned a home, (iii) that her then-current landlord was Crooked Meadow Realty, and (iv) that she did not then own a home.  As to each of these representations, I have found that the Debtor made the representation, knew it to be false when she made it, and made it with intent both to deceive and to induce the creditor to rely upon the false statement.  I have further found that the Town actually relied upon each of these

18

misrepresentations and did so justifiably, having no reason to question the veracity of the representations. I have further found the Town's reliance upon the false statements caused damage by inducing the Town to permit the Debtor to participate in a lottery to acquire a unit the Debtor was not in fact eligible to acquire, by inducing the Town to cause the sale of the Unit to the Debtor, and, ultimately, by causing the Town to incur expenses to compel the Debtor to sell the Unit back to the Town pursuant to and on the terms specified in the Deed Rider, especially after she had on four occasions transferred or created encumbrances against the Unit in violation of the Deed Rider.  In short, the misrepresentations gave rise to debt for property, including both the right of the Town to reacquire the Unit upon exercise of its right of first refusal, and the attorney's fees and costs awarded by the state court as compensation for the cost to the Town of recovering the Unit from the Debtor.

This leaves only the requirement that the representation be other than a statement respecting the debtor's or an insider's financial condition.  Of the four representations in issue, the first—that Laciga Rachaisri would be a separate member of her household from the Debtor herself—clearly did not concern the Debtor's or an insider's financial condition.  Accordingly, all the requirements of that subsection are satisfied as to this representation; and, on the basis of this representation, the judgment obligations are excepted from discharge.

The remaining three representations fall into a gray area.  Whether they are "statements respecting the debtor's or an insider's financial condition" depends on what constitutes a statement respecting the debtor's or an insider's financial condition, an unsettled issue.  Some courts have taken the position that it should be construed narrowly, to apply only to statements concerning the debtor's overall financial condition, such as a balance sheet, an income statement, or a tax return.  Others view the term much more broadly, as applying to any statement bearing on the debtor's financial condition and including representations regarding the ownership of a single asset. I have previously ruled that the narrower interpretation is the more appropriate, *Danvers Saving Bank v. Alexander*, 427 B.R. 183, 195

19

(Bankr. D. Mass. 2010), and I follow that ruling here.  The three representations in question are not broad enough in scope to constitute "statements respecting the debtor's or an insider's financial condition" within the meaning of § 523(a)(2).  Accordingly, the three statements are appropriately subject to subsection (a)(2)(A).  All the requirements of that subsection having been satisfied as to each of the three, each is a further basis for excepting the judgment obligations from discharge.

**CONCLUSION**

For the reasons set forth above, judgment shall enter declaring the Debtor's obligations under the state court judgment to be excepted from discharge.

Date:  November 7, 2018                                     _____
                                                            Frank J. Bailey
                                                            United States Bankruptcy Judge